**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FLAVIA MARTINS CAHOTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-0769 |
| | § | |
| BAPTISTA SUMBE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Flavia Martins Cahote, who is representing herself, sued Baptista Sumbe, the Chief Executive Officer of Sonangol U.S.A. Company, alleging negligence and breach of contract. Cahote is an Angolan citizen admitted to this country on a temporary F-1 visa as a nonimmigrant alien for the purpose of study in the United States. She alleges that in October 2006, Sumbe signed a letter committing the support and sponsorship of Sonangol U.S.A. Company for her admission to the United States under an F-1 student visa. On the basis of that commitment, Cahote came to Houston, Texas and enrolled full-time in the University of Houston. Cahote alleges that Sonangol did not provide her financial support, pay tuition, or otherwise perform as promised in the sponsorship letter.

In this suit, Cahote alleges that she is entitled to receive $110,000.00, the amount necessary to pursue her academic program in the United States, cover her travel back to Angola at the end of her studies, and compensate for her emotional distress. Cahote alleges that Sumbe was negligent and inflicted emotional distress on her.

Sumbe moved to dismiss, alleging that this court lacks subject-matter jurisdiction because the only claims alleged were state-law claims. (Docket Entry No. 7). Sumbe also asserts that the claim is not one on which relief can be granted. Cahote responded, arguing that the case is based on a sponsorship letter that was part of her F-1 student visa status, and therefore arises out of federal immigration law. (Docket Entry Nos. 8, 9, 10). In an April 16, 2008 memorandum and order, this court denied Sumbe's motion to dismiss, noting that although Cahote failed to assert a federal claim or refer to any federal law creating a cause of action, this court might have subject-matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). This court required Sumbe to submit evidence of his citizenship by May 9, 2008 to enable this court to determine whether it has diversity jurisdiction.

Sumbe supplemented the record with additional briefing on the issue of this court's subject-matter jurisdiction, as well as copies of his Angolan passport, valid from October 25, 2006 to October 25, 2016, and his United States permanent resident card, valid from July 14, 2005 to July 14, 2015. (Docket Entry No. 12). Sumbe also filed briefing to support his motion to dismiss for failure to state a claim. (Docket Entry No. 13). Cahote has responded. (Docket Entry Nos. 14, 15).

Based on the motion, responses, and replies, the record, and the applicable law, this court grants Sumbe's motion to dismiss for lack of subject-matter jurisdiction. The reasons are explained below.

**I.    Subject-Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)). The party who invokes the jurisdiction of the federal courts bears the burden of showing that jurisdiction is proper. *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

Title 28 U.S.C. § 1332 states as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
>
> > (1) citizens of different States;
> >
> > (2) citizens of a State and citizens or subjects of a foreign state;
> >
> > (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
>
> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

## II.   Analysis

Sumbe has submitted evidence showing that he is a citizen of Angola who has been admitted to the United States as a permanent resident. (Docket Entry No. 13, Ex. A). Cahote argues that this court has diversity jurisdiction over her suit because under 28 U.S.C. § 1332(a), Sumbe, a United States permanent resident, "is treated as a citizen of the state where [he] resides." (Docket Entry No. 13, ¶ 12).

Sumbe contends that the purpose of this "individual deeming provision" was "to narrow diversity jurisdiction to eliminate federal jurisdiction on suits between a citizen of a state and a permanent resident alien domiciled in the same state, not to broaden it . . . to include suits in which an alien sued an alien." (Docket Entry No. 12, ¶ 22). To support this argument, Sumbe relies on *Saadeh v. Farouki*, 107 F.3d 52, 58 (D.C. Cir. 1997), in which the D.C. Circuit found that a "literal reading" of section 1332(a) "would produce an odd and potentially unconstitutional result" by "partially abrogat[ing] the longstanding rule of complete diversity, and creat[ing] federal diversity jurisdiction over a lawsuit brought by one alien against another alien, without a citizen of a state on either side of the litigation," in contravention of the Diversity Clause of Article III of the Constitution. The *Saadeh* court

refused to conclude "that [the individual deeming provision] was intended to create diversity jurisdiction where it did not previously exist" and found that the district court lacked subject-matter jurisdiction over a suit in which an alien sued a United States permanent resident alien. 107 F.3d at 60. Sumbe cites subsequent district-court opinions that have adopted the *Saadeh* court's reasoning in declining to exercise diversity jurisdiction over suits between an alien and a permanent resident alien.

Courts are divided over whether section 1332(a)'s individual deeming provision supports diversity jurisdiction over suits involving an alien on one side and a permanent resident alien on the other. *Compare Singh v. Daimler-Benz AG*, 9 F.3d 303 (3d Cir. 1993) (finding no ambiguity in the deeming provision, such that "the possible unintended effect of permitting a permanent resident alien to invoke diversity jurisdiction when that party could not have done so before the amendment is not sufficient reason for us to torture or limit the statutory language") *with Saadeh*, 107 F.3d 52 (examining the legislative history of section 1332(a) and determining that "[t]here is no reason to conclude . . . that the [deeming provision] was intended to create diversity where it did not previously exist"). Courts have been more willing to find diversity jurisdiction based on the deeming provision in cases involving a United States citizen in addition to resident and nonresident aliens. *See, e.g.*, *Singh*, 9 F.3d 303 (finding diversity jurisdiction under § 1332(a) in a lawsuit brought by a permanent resident alien against a German corporation and its American distributor); *Kedia v. Jamal*, No. 06-6054 (GEB), 2007 WL 1147059, at *3 (D.N.J. Apr. 18, 2007) (addressing a suit brought by a permanent resident alien against a United States citizen and a nonresident

alien and finding that "[t]his action is analogous to *Singh*" and that diversity jurisdiction was satisfied); *In re Bridgestone/Firestone, Inc.*, 247 F. Supp. 2d 1071, 1075 (S.D. Ind. 2003) (distinguishing *Saadeh* as involving "only foreign citizens or aliens on both sides of the litigation," such that the "motivation" to "sidestep the unambiguous language of the 1988 Amendment in deference to the objective of avoiding an unconstitutional result" is "not strong here" in a case involving both aliens and United States citizens).

By contrast, courts presented with a suit involving only aliens on both sides of the litigation have adopted the *Saadeh* court's reasoning and declined to find diversity jurisdiction. *See, e.g.*, *Thompson v. Deloitte & Touche LLP*, 503 F. Supp. 2d 1118, 1128 (S.D. Iowa 2007) ("The Court concludes that the 1998 amendment [to § 1332(a)] did not expand diversity jurisdiction to cover suits involving permanent resident aliens appearing opposite aliens."); *Van Der Steen v. Sygen Int'l, PLC*, 464 F. Supp. 2d 931 (N.D. Cal. 2006) ("[T]his Court declines to construe [§ 1332(a)] as conferring federal jurisdiction in cases involving only aliens on both sides."); *Darel v. Darel*, No. CV-06-2397-PHX-PGR, 2006 WL 3330600, at *1 (D. Ariz. Nov. 15, 2006) (adopting "as better reasoned the view of those courts that have concluded that the amendment to § 1332 did not enlarge diversity jurisdiction so as to encompass actions between non-resident aliens and permanent resident aliens"); *Gall v. Topcall Int'l, A.G.*, No. Civ.A. 04-CV-432, 2005 WL 664502, at *6 (E.D. Mar. 21, 2005) (noting that "interpreting the deeming provision in a way that prevents the federal judiciary from exercising jurisdiction over a suit between two aliens faithfully adheres to the alienage text of Article III"); *Matsuda v. Wada*, 128 F. Supp. 2d 659, 667 (D.

Haw. 2000) (adopting the *Saadeh* court's "alternative construction of § 1332(a) so as to avoid an unconstitutional reading of the statute" and holding that "[u]nder this reading, there is no diversity of citizenship between permanent resident aliens and non-resident aliens"); *Ozawa v. Miyata*, No. 96 C 7500, 1997 WL 779047, at *2–3 (N.D. Ill. Dec. 15, 1997) (holding "that § 1332(a), as amended, does not permit us to exercise jurisdiction over a case involving only aliens"). These courts have concluded that in adding the deeming provision to section 1332(a), Congress "intended only to eliminate subject matter jurisdiction of cases between a citizen and an alien living in the same state," not to "create diversity jurisdiction where it did not previously exist" between aliens, regardless of their residence status. *Saadeh*, 107 F.3d at 60.

The *Saadeh* court's analysis and the weight of subsequent case law adopting *Saadeh*'s interpretation of the deeming provision in cases involving only aliens is persuasive. The record shows that this suit involves a nonresident alien, Cahote, and a permanent resident alien, Sumbe. Cahote does not dispute Sumbe's status as a citizen of Angola and a permanent resident of the United States. Under section 1332(a), this court lacks subject-matter jurisdiction over Cahote's suit.

Sumbe's motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction is granted.

SIGNED on June 27, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

Case 4:08-cv-00769   Document 22   Filed in TXSD on 06/27/08   Page 8 of 8